## Case No. 3,199.

### COOPER v. MATTHEYS.

[See Case No. 3,200.]

---

## Case No. 3,200.

### COOPER v. MATTHEYS.

[5 Pa. Law J. 38; 8 Law Rep. 413.]

Circuit Court, E. D. Pennsylvania. May, 1842.

ENJOINING INFRINGEMENT OF PATENT—LACHES.

1. An injunction will not be granted to restrain the violation of a patent or copy-right, where the defendant has been in possession a length of time, claiming by an adverse title, until the right is first settled at law; nor will it be granted in any case where the party applying for it has not shown good faith, conscience, activity and diligence, nor where there is any doubt or uncertainty as to the facts.

2. If, on a motion for an injunction, there appears from the affidavits of the parties, or witnesses, such a repugnancy in point of fact as makes it necessary to decide as to the rela-

tive truth of their conflicting statements, or the credibility of the witnesses, the injunction will not be granted.

[Cited in Stimpson v. West Chester R. Co., 4 How. (45 U. S.) 387.]

3. The loss of a patent issued under the act of 1793 [1 Stat. 318], which directs it to be recorded, is no excuse for the plaintiff's delay to apply for an injunction to restrain its violation, nor where his improvement or patent has come into public use during his inaction, or from a state of things of which he might have had notice by the use of due diligence, although he had no notice of the violation by the defendant.

On motion for an injunction to restrain the infringement of a patent [granted to I. Cooper, October 25, 1832], after bill filed and suit at law commenced at the same time.

J. R. Ingersoll, for plaintiff.

William L. Hirst and James Todd, for defendant.

BALDWIN, Circuit Justice. The plaintiff in his bill sets out a patent for a new and useful improvement in constructing carriages for railroads, granted in October, 1832, which he alleged was lost before 15th of December, 1836, and a new one granted in October, 1839, for the same improvement; that he has sold the invention, reserving the right to use it; that it is used by his vendees, and that from the date of the patent the defendant had made and sold, and is now making for sale, carriages with the improvements patented, with notice of the patent, &c. In a special affidavit attached to the bill, the plaintiff states that he is in possession of the improvement patented, and has made sales of rights to use and sell it to the persons, and for the sums specified; that defendant is a car builder, engaged in infringing the plaintiff's right. In an affidavit made before filing the bill, the plaintiff states that he sold the right to use his invention to the New Castle and Frenchtown Railroad Company, in 1832, and knew of no others using it but himself till 1835, when he found Leech's line using them, and gave notice to their agent at Johnstown, and one of the parties interested in that line, that he would bring suit, that he employed an attorney to sue another person who used the improvement, who he was informed settled for the same, that the patent was lost in 1836, and he has never been able to find it. That he knew of no persons infringing his right till lately, that he has resided in Johnstown since 1834, that he has but lately heard of the use of his improvement in Philadelphia, and lost no time in giving notice of his right, and forbidding the use thereof. The bill was filed the 15th of April; on the 16th, defendant stated in an affidavit, that he had been engaged for three years past, and is still engaged as a master workman in making cars for the railroads in Pennsylvania, without any notice or application of the plaintiff, and never saw the model of plaintiff's improvement till the 14th inst., that to the best of his knowledge

he has never used the plaintiff's improvement or any part of it, nor ever heard of its being patented, that he builds on his own plan as directed by the Pennsylvania engineers, and does not interfere with plaintiff's improvement; employs twelve hands, and is under a contract to build five cars for carriers on the Pennsylvania improvement. That he follows the plan of one Arnold, to whom he succeeded; that Arnold carried on the business many years in the same shop immediately preceding the defendant's taking it. In a supplementary affidavit on the 11th of April, he states that Arnold made cars similar to what defendant makes since 1831 or 1832, without any claim by plaintiff, and that defendant has never built a car on plaintiff's plan, and does not intend to do it—that any sales made by plaintiff have been made within a few months past—that he never heard of any such sales till within two weeks, and will answer the bill.

Thomas B. Parker states in his affidavit taken 17th April, that he commenced building cars as a master workman in 1836, and continued to do so till 1839, on the same plan as Arnold and Mattheys, as directed by the engineers of Pennsylvania; that he never heard of plaintiff's patent till about the 1st of April, and first saw his model on the 15th; that he has never used plaintiff's improvement or intended to use it. By his counter affidavit on the 17th April, though plaintiff stated that he never knew of the defendant's infringement of his right till a few days ago, or that it had been infringed by others, except those with whom he made arrangements, whom he names, and states the sums they paid him, and that the defendant's cars are a direct violation of plaintiff's patent by using the improvement specified. Peter Allison, in his affidavit on the same day, states that defendant uses the plaintiff's improvement in all its parts, and that the improvement is original. The defendant produced the affidavit of F. D. Sanno, that he saw cars on the Mauch Chunk Railroad in 1836, which were constructed in the same manner substantially as those of the defendant and Parker, and that they were in common use as passenger cars.

On this state of the case as disclosed by the bill and affidavits, it will be asumed for the purposes of this motion, that the facts therein stated and not contradicted, are true, though they will not have the same effect as on a motion to dissolve an injunction on the coming in of an answer after the return of a subpoena, or on the final hearing of the cause. On the motion to award an injunction, the plaintiff must rest on the case stated in the bill, though he may by affidavit state any matters which it sets forth with more particularity, and a reference to collateral matters which explain, or which tend to support and strengthen it; he may, also, in the same way, contradict any statements made by the defendant in his affidavit, and

either party may take and read the affidavits of other persons. 19 Ves. 621. But no affidavit of the defendant (or his answer in this stage of the case, which is considered an affidavit,—1 Russ. 362; 1 Cord. c. 66; 19 Ves. 351; 1 Jac. & W. 590) can be considered as evidence to overthrow any averments in the bill, not supported by other testimony; it is only affidavit against affidavit, on which the chancellor decides if he is fully satisfied how the fact may be; or if there is such contradiction in the respective affidavits as leaves him in doubt, he refers the matter to a master, or directs an issue to inform his conscience before deciding the motion.

In awarding an injunction a very delicate and highly responsible power is used, which ought not to be exerted when there is reasonable doubt as to the existence of any fact on which the application is founded. 2 Dickens, 600; Cowp. 7. If there appears from the affidavits of the parties or witnesses, such a repugnancy in point of fact as makes it necessary to decide on the relative truth of their conflicting statements or the credibility of the affirmants, no prudent judge will undertake so dangerous an inquiry in the first stage of the cause. Great latitude is allowed in order to present the application with all its attendant circumstances operating in favor of or against it, though the range may be wider than the bill. It depends on the matters of fact or law, which appears to be contested, whether the chancellor will examine the above case involving the respective rights of the parties. The great object is to look for that full information which will lead his mind to a certainty as to all material facts, for doubt or uncertainty is fatal to the motion to grant the injunction (2 Atk. 182; 1 Dickens, 101; 1 Baldw. 218 [Bonaparte v. Camden & A. R. Co., Case No. 1,617]; 4 Wash. C. C. 260 [Isaac v. Cooper, Case No. 7,096]), though it is a good cause for continuing it on a motion to dissolve (3 Ves. 140); the burthen of proof being on the plaintiff in one case and on the defendant in the other. On the other hand if the bill or affidavit state any facts not denied in the affidavits on the part of the defendant, or the plaintiff by counter-affidavits does not deny the statements of the defendant, such facts are assumed as a safe basis for a decision on the motion, though they may be open to inquiry at a subsequent state of the cause, and the matters of law involved in the motion will be considered with reference thereto.

The reason on which any action is declined, when there is an issue of fact between the parties or their affirmant, is obvious. By granting the injunction, positive credence is given to the affidavits on the part of the plaintiff, and those of the defendant are repudiated directly, whereas by refusing the injunction nothing more is done or intended than a decision that the fact is so doubtful as not to be safe to act on the assumption of its truth, thus leaving it entirely open to future investigation. It must be obvious too, that in applying for an injunction, the plaintiff seeks either to interrupt the course of the common law or to ask for some relief which he cannot have at law; he must consequently state and make out a case for equitable relief on such facts as bring his case within the jurisdiction of courts of equity and proper for its exercise. Hence if he fails to satisfy the conscience of the chancellor affirmatively, he has no case before him, for the doubt or uncertainty as to facts is of the same effect on a motion, as their non-existence.

In this case the grant of a patent to the plaintiff for the improvements specified, its validity, or his possession of the exclusive right to use it as stated by the plaintiff, or the fact of his using, selling and making contracts for its sale and use, is not controverted by the defendant, and will be assumed as sufficiently made out. Nor has the plaintiff contested the facts that the defendant is, and for three years has been, a car builder, or that Arnold, to whom he succeeded, was not so engaged for some years before—that either had notice of the patent or of plaintiff's claim otherwise than is stated, or denied that Parker had been engaged in building on the same plan as Arnold and the defendant, from 1836 to 1839. There is however, a direct issue between the parties on the fact of infringement of the patent right; by its positive averment on one side, and as positive denial on the other, after having seen the plaintiff's model; though the defendant's first affidavit was to the best of his knowledge, his supplementary one is unqualified that he never used the plaintiff's improvements—so that, as both sets of affidavits cannot be true, the fact of infringement depends on which are entitled to credence. The exhibition of the models on which the parties construct their respective carriages, does not suffice to turn the scale either way, without an examination into the details of the construction, combination and operation of all their parts by competent mechanics, who, on a comparison of the models, might decide the fact of infringement, if they concurred in opinion, but if they differed, would leave it as doubtful as it is on the affidavits; and, as the fact depends on the substantial identity of the cars in their parts, combination and effect, with no other sources of information than the affidavits and an inspection of the models, it would be incurring great danger of error, were the infringement to be taken as proved on such evidence as has been exhibited by the plaintiff, when it is opposed by the oath of those who bring master workmen in the construction of the cars, who must be equally competent to know whether the patent is violated or not. Assuming, then, that all the other averments in the plaintiff's bill and affidavits are true, he has

not made out so clear a case of an infringement of his right, as to come within the rules of equity, as laid down by the court in the various cases which have arisen; he has not satisfactorily established the fact on which the motion turns, in the absence of which he has no case at law or in equity, or, which is of the same effect on this motion, he has not so clearly established it as to leave no reasonable doubt or uncertainty respecting it. 4 Wash. 261 [Isaac v. Cooper, Case No. 7,096]. On this ground alone the motion must be overruled; but there are others equally decisive and more general, as well as more important, in their application. Taking the plaintiff's right to be unquestioned—assuming the violation by the defendant, as well as all the averments in his bill and affidavits to be true—they do not so account for the lapse of time before bringing a suit at law, or applying for an injunction, as to bring his case within the settled rules of equity, which require the plaintiff to be prompt in his application for that summary and prompt relief which is afforded only in cases where there has been due diligence in asserting his rights. Indeed, the nature of the relief points directly to its requisites; it is to protect from impending danger a right, or property, which the law cannot avert. If he acquiesces, or is inactive, while the danger exists or the mischief is done, it negatives the necessity of action in equity, unless the inaction is accounted for.

The loss of his patent is no excuse for delay. It was issued under the act of 1793, which directed it to be recorded. 1 Story's Laws, 301 [1 Stat. 318]. A copy could have been obtained, which would have been full evidence of his right as the original. [Patterson v. Winn] 5 Pet. [30 U. S.] 241. A new patent issued under the 3d section of the act of 1837, gave no better evidence of his right, than a copy of the old one; nor afforded any additional protection. 4 Story's Laws, 2547 [5 Stat. 192]. The case stands, therefore, as if the original patent had not been lost. The want of actual knowledge of the infringement by the defendant and Parker or Arnold, is not, under the circumstances of the case, a sufficient excuse. The plaintiff states in his first affidavit, that he knew of the use of his improvement on Leech's, in 1835; that his residence for the past six years has been at the end of the western section of the Pennsylvania Railroad, and that he then gave notice of his patent, &c.; but he does not state that he has brought suit, or permitted the use of his improvement by that company. This is such knowledge of a public use on one end of the great line of transportation traversing nearly the whole state; and there is such a connection between the railroads and intermediate canal, that notice of the infringement at one end, by one of the transportation companies, gave the strongest reasons for believing that it had happened at the other end, such as ought to have led to prompt inquiry to ascertain the fact, which was easily done. Under such circumstances, the want of knowledge is so far evidence of negligence in not preventing the public use of the invention patented, both by the construction and use of the carriages on which it is used on the great route of transportation, as to impress on the case such laches as leaves the plaintiff to his remedy at law. The inquiry is not whether the plaintiff had notice of the violation of his right by the defendant, but whether his improvement has come into public use during his inaction on a state of things of which he might have had notice by the use of due diligence, or when the law of equity deems negligence to be the same as notice. A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights, or acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence; while these are wanting, the court is passive and does nothing; laches and neglect are always discountenanced; and therefore, from the beginning of this jurisdiction, there was always a limitation of suit in this court. [Piatt v. Vattier] 9 Pet. [34 U. S.] 416, 417; Smith v. Clay, cited from 3 Brown, Ch. 640. This principle is peculiarly applicable to motions for injunction in cases of patent and copyright, and has been uniformly applied to them. It will not be granted against a party who has been led into the publication by the encouragement and acquiescence of the author. Jac. 311; 1 Cox, Ch. 283. When the author suffers time to run on the violation of his right—where ten have been allowed to publish, the court will not restrain the eleventh. A court of equity frequently refuses an injunction, where it acknowledges a right, when the conduct of the party had led to a state of things which occasions the application, and therefore will refuse or dissolve an injunction, without saying in whom the right is. 4 Con. Ch. 140. Or where the copy right is admitted, if the violation has been of long continuance. 19 Ves. 447, 448. An injunction will not be granted to restrain a party who has been in possession any length of time, claiming by a title adverse, till the right is first settled at law. 7 Ch. 165; 6 Jac. Dict. 20; 19 Ves. 448; 1 Cox, Ch. 283; 6 Ves. 51. A plaintiff who states such a case, puts himself out of court. 4 Jac. Dict. 22. It is a proper remedy to protect a possession till it appears to be against right, but is never used to disturb a possession under claim and colour of right. 1 Ves. Sr. 476. S. P. 4 Wash. C. C. 260, 261 [Isaac v. Cooper, Case No. 7,096]. Had the plaintiff used due diligence in asserting his right, when he knew of its violation in 1836; had he put himself on inquiry whether others had violated, or were about to violate it, and

sought relief by a prompt application, his case as stated in the bill and affidavits, was a proper one for an injunction.

The sale of his invention, its use by himself and vendors, was sufficient evidence of an exclusive possession by claim and colour of title, so that equity would have protected him in the continued enjoyment, whatever doubts might have existed as to the validity of his patent. 6 Ves. 707, 708. Such possession would have been secured from disturbance, till on a trial or a final hearing, it should appear to be without right. 3 Mer. 628.

The rule on which courts of equity act by an injunction in the first instance, is to leave the parties in the same position as it finds them when the application for relief is made, by protecting the plaintiff in the same possession which he had before enjoyed, and when the possession of the defendant had been unmolested, leaving the right of possession to be settled at law. No cases come before courts of equity, in which a greater degree of diligence is required, than applications for injunctions (2 Dow. 6, 536); their nature and effect are such as to produce the most irreparable injury when they are improvidently granted. Time, which bears heavily on all rights or violations of right which are not asserted with diligence, has run on the possession of Arnold and the defendant for eight or nine years, and of Parker for three, by which the use of the plaintiff's improvement has become public, without any resort to legal remedies till the present application was made. Had this public use existed before the application for the patent, with the consent of the plaintiff or with his knowledge and acquiescence, it would have been void, as held in Pennock v. Dialogue, 2 Pet. [27 U. S.] 18, 20, and as expressly declared in the 15th section of the act 1836 (4 Story's Laws, 2511 [5 Stat. 123]). If, then, the want of actual knowledge of the long continued construction and public use of cars, on the plaintiff's plan, shall be considered as sufficiently accounting for his inaction, it will follow that an injunction will be granted, notwithstanding the lapse of time, unless the defendant will make out such a case after the patent has issued, as would make it void if it had existed before the application; in other words, such a case as would justify the presumption of abandonment, or dedication of the improvement to the public. Such a principle cannot be adopted without reversing the established course of equity, and confounding cases where the injunction is applied to protect a right or continue a possession till the right is decided; it would also operate most severely and unjustly on the plaintiff, if the same state of things which would defeat the injunction on a motion, would annul his patent on a trial, which must be the result if the public use before a patent is applied, which avoids it, must be made out after it is granted in order to prevent an injunction.

Equity acts on different principles in protecting the possession of the plaintiff, or declining to disturb the defendant; it leaves the rights of the parties as they stand at law. Though a plaintiff may have been wanting in that degree of diligence which entitles him to relief in equity, yet that alone does not impair his right or remedy in damages at law.

A defendant, though enjoined in equity from interrupting the possession of the plaintiff, may contest the right at law to the same extent as if equity had not interfered. In refusing the injunction in this case, no more is done or intended, than to decide that the plaintiff has not made out a case which entitles him to any relief which he cannot have at law. Every right which he may have to damages in the pending suit remains wholly unimpaired, and if he establishes his right and its violation on the trial, he will be entitled to an injunction on the final hearing of this cause. The motion for an injunction, however, in this case, rests on much narrower ground than has been thus far assumed in favour of the plaintiff. On the actual posture of the case, there are two objections to the injunction, which in the words of my predecessor, "are insurmountable" and "fatal." The positive denial that the defendant makes cars upon the plan of the plaintiff's asserted improvement, and his averment that the cars he makes do not interfere with the plaintiff's patent, is not disproved; and from the uncontradicted affidavits on the part of the defendant, it appears that the cars made by him, Arnold and Parker, were in public use from the date of the original patent. On both grounds, therefore, this case comes fully within the principles of Isaacs v. Cooper [Case No. 7,096]. The infringement is denied, the plaintiff's possession was not exclusive, and excepting the sale to the New Castle company, all the acts which evidence the actual enjoyment of his improvement, were subsequent to the actual possession and continued use by the defendant, of the plan on which he now constructs his car, or, at most, simultaneous herewith. In addition to which, the plaintiff has failed in showing that due diligence which is indispensable to give him a standing in a court of equity, before a trial of his right to interrupt the defendant in the practical, useful, and public employment, in which he has been actively engaged for years. As just regard to private right as well as public convenience, forbids the exercise, in such a case, of the high, delicate, and dangerous power now invoked; the courts of this circuit, and its judges, have exerted this part of their jurisdiction with great caution, always declining it in a doubtful case, or one not brought forward by a party who was vigilant, nor ever disturbing the course of the common law, by awarding to a party that extraordinary remedy in equity which goes beyond the rules of law, unless he presents a case clearly within those

established rules and principles which are the basis of equity jurisprudence.

The motion for the injunction is, therefore, overruled.

NOTE [from original report]. We have published in the foregoing pages the elaborate opinion of the late Mr. Justice Baldwin in the case of Cooper v. Matthews, on the subject of granting injunctions, particularly in reference to restraining the infringement of patent and copy rights. This opinion comprehends the whole learning of the subject granting injunctions; and the principles which it settles, have since been uniformly adhered to by the court, in the exercise of this important branch of their jurisdiction. This decision was published on the 22nd of May, 1842 (a few days after it was pronounced), in the Public Ledger, but the few copies that were preserved have rendered the case less known, and therefore less useful, than a larger acquaintance with it, and easier access, will effect.